IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

K.H., a minor, by and through his Parents  \*
KRISTINE HAHN and CHRISTOPHER HAHN
                                                          \*

    *Plaintiff,*
                                                           \*

v.                                                                   Case No.: CCB 21-cv-0260
                                                           \*

FRANKLIN SQUARE HOSPITAL, INC.,
d/b/a MEDSTAR FRANKLIN SQUARE      \*
MEDICAL CENTER, et al.
                                                           \*

    *Defendants.*
                                                          \*

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## CERTIFICATE OF QUALIFIED EXPERT

I, Frank Manning, M.D., hereby certify as follows:

1. I am a physician licensed to practice medicine in Florida.

2. I am board-certified in the medical specialty of obstetrics and gynecology and the subspecialty of maternal-fetal medicine.

3. I have provided consultation relating to clinical practice in the fields of obstetrics and gynecology and maternal-fetal medicine and/or have taught in the fields of obstetrics and gynecology and maternal-fetal medicine within five years of the date of the alleged acts or omissions giving rise to the claim filed in this case.

4. I do not devote annually more than 25 percent of my professional activities to activities that directly involve testimony in personal injury claims.

5. I have reviewed the pertinent medical records of care rendered to Kristine Hahn and Kyle Hahn at Franklin Square Family Health Center and MedStar Franklin Square Medical Center. I

have also reviewed Plaintiffs' Complaint and the Certificate of Merit and expert report signed by Andrew Robertson, M.D.

6. Based on my review of the medical records and other case materials, and on my education, training, and experience, it is my opinion, to a reasonable degree of medical probability, that Adam Dimitrov, M.D., Michael Xavier Dwyer, M.D., Djordie Gikic, M.D., Arlene Emmons, M.D., Lilia DuRussel, M.D., Raymond Wright, M.D., and Franklin Square Hospital Center, Inc. d/b/a MedStar Franklin Square Medical Center and its agents, servants, and/or employees (collectively "the MFSMC providers") complied with the applicable standard of care and that Plaintiff's alleged damages were not proximately caused by any breaches in the standard of care by any of the aforementioned individuals.

7. My report regarding the above-referenced matter is attached hereto, as is my curriculum vitae.

_____
Frank Manning, M.D.

Respectfully submitted,

/s/ Janet A. Forero
Janet A. Forero (jforero@gdldlaw.com)
Bar No. 06578
Jhanelle Graham Caldwell (jcaldwell@gdldlaw.com)
Bar No. 19106
Jessica J. Ayd (jayd@gdldlaw.com)
Bar No. 1013461
Goodell, DeVries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, MD 21202
(410) 783-4000 (Telephone)
(401) 783-4040 (Facsimile)

/s/ Meghan Hatfield Yanacek
Meghan Hatfield Yanacek
(myanacek@hallboothsmith.com)
Bar No. 29689
Hall Booth Smith, PC
191 Peachtree Street
Atlanta, GA 30303
(404) 954-5000 (Telephone)
(404) 954-5020 (Facsimile)

*Attorneys for the Defendants MedStar Franklin Square Medical Center, Adam Dimitrov, M.D., Michael Dwyer, M.D., Arlene Emmons, M.D., Lilia DuRussel, M.D., and Raymond Wright, M.D.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of June 2021, a copy of Certificate of Qualified Expert and Report of Frank Manning, M.D. was served via electronic filing on:

Christopher Norman, Esquire
Brian Cathell, Esquire
Kiernan Murphy, Esquire
Wais Vogelstein, Forman & Offutt, LLC
1829 Reisterstown Road, Suite 425
Baltimore, Maryland 21208
*Attorneys for the Plaintiff*

/s/ Jessica Ayd
Jessica J. Ayd

4810-6920-4461, v. 1

June 5, 2021

Janet A. Forero, Esquire
Jessica J. Ayd, Esquire
Goodell, DeVries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, Maryland 21202

Re:   *Kyle Hahn v. MedStar Franklin Square Medical Center, et al.*

Dear Counsel:

I am writing to provide a report concerning my review of the case of Kyle Hahn v. MedStar Franklin Square Medical Center, et al. I am a physician licensed to practice in Florida. I am board-certified in the medical specialty of obstetrics and gynecology and the medical subspecialty of maternal-fetal medicine. Through my training, practice, and experience, I am familiar with the standard of care applicable during the time period relevant to this case among physicians, residents, nurses and other hospital staff providing care to patients like Kristine Hahn. The standard of care applicable to those health care providers is that degree of care and skill expected of a reasonably competent health care provider acting in similar circumstances.

I have reviewed Kristine Hahn's medical records from Franklin Square Family Health Center and MedStar Franklin Square Medical Center. I have also reviewed Plaintiff's Complaint and the Certificate of Merit and expert report signed by Andrew Robertson, M.D. Based on my review of the medical records and other case materials, and on my education, training, and experience, it is my opinion, to a reasonable degree of medical probability, that Adam Dimitrov, M.D., Michael Xavier Dwyer, M.D., Djordie Gikic, M.D., Arlene Emmons, M.D., Lilia DuRussel, M.D., Raymond Wright, M.D., and Franklin Square Hospital Center d/b/a MedStar Franklin Square Medical Center and its agents, servants, and/or employees (collectively "the MFSMC providers") complied with the applicable standard of care and that Plaintiff's alleged damages, including any alleged injury to Kyle Hahn, were not proximately caused by any breaches in the standard of care by the MFSMC providers.

Kristine Hahn was a 37-year-old seen for prenatal care at the Family Health Center (FHC) at MedStar Franklin Square Medical Center. On October 27, 2003, Ms. Hahn presented for a prenatal visit at the FHC. She was 38 weeks and 4 days' gestation. Her blood pressures on this visit were 142/88 and 145/90. She was asked to return in 4 days for a blood pressure check. This was a reasonable and appropriate plan. I respectfully disagree with Dr. Robertson's contention that the standard of care required a diagnosis of pregnancy-induced hypertension, an estimation of fetal growth, an estimation of amniotic fluid status, and that a non-stress test be performed. I further disagree with Dr. Robertson's contention that the standard of care required Ms. Hahn's providers to recommend induction of labor and delivery at 39 weeks' gestation.

On October 31, 2003, Ms. Hahn returned to the Family Health Center for blood pressure checks. At that time, Ms. Hahn was documented as having an initial blood pressure reading of 154/88. A second blood pressure reading revealed that her blood pressure was 160/90. Ms. Hahn was appropriately referred to Labor and Delivery at MedStar Franklin Square Medical Center for blood pressure monitoring and possible admission. Ms. Hahn was evaluated in Labor and Delivery at 10:00 a.m. by Dr. Gikic. Over the next two hours, Ms. Hahn's blood pressure readings were as follows: 141/93, 142/80, 143/122, 137/80, 124/61, 133/54, 131/54, 129/64, and 124/70. Her urine was 1+ protein. Her "PIH labs" were normal. Ms. Hahn was placed on the electronic fetal monitor and the reading showed a baseline fetal heart rate in the 150s, no uterine activity, average (+) variability, accelerations, and no decelerations. The fetal monitoring was assessed as reactive. Ms. Hahn was discharged with "gestational hypertension warnings." The discharge plan was bed rest with preeclampsia precautions. Ms. Hahn was advised to follow up with Dr. Dimitrov on November 3, 2003.

At the November 3, 2003 visit, Ms. Hahn's blood pressure was 142/82. She denied right upper quadrant pain, and Dr. Dimitrov noted that there were no signs or symptoms of preeclampsia. His plan was for induction of the labor "next week." This was a reasonable and appropriate plan.

Ms. Hahn claims that her membranes ruptured at approximately 10:00 p.m. on November 9, 2003. It is alleged that, upon notifying the FHC of the spontaneous rupture, Ms. Hahn was allegedly advised that she could wait until the following day to report to the hospital, as she was already scheduled for a prenatal evaluation. Even assuming this is an accurate recitation of events, this was reasonable and within the standard of care. Ms. Hahn was not in active labor and, therefore, it was not necessary for her to report to the hospital immediately. Ms. Hahn returned to FHC on November 10, 2003 for her scheduled visit. She was 40 weeks and 5 days gestation. She was referred to Labor and Delivery for admission and induction of labor.

Ms. Hahn was admitted to the hospital at 3:25 p.m. on November 10, 2003 for induction of labor. Ms. Hahn was triaged and timely placed on a fetal monitor at 4:32 p.m. Her cervical exam was 1.5/60/-2 with confirmed ruptured membranes. At approximately 6:20 p.m., Dr. DuRussel evaluated Ms. Hahn and performed a BPP with a result of 2/10 (2+ for amniotic fluid). At that time, the obstetrical team, in consultation with the family medicine team, recommended a cesarean section. Ms. Hahn was in the operating room at 7:26 p.m. The skin incision was made at 7:55 p.m., and the baby, Kyle Hahn, was delivered at 8:08 p.m. His APGARs were 6 and 8 at one and five minutes. The umbilical artery gases were: pH = 7.08, $pCO_2$ = 77, $HCO_3-$ = 22, BE = -10.

In general and without limitation, it is my opinion that the MFSMC providers provided appropriate care and treatment to Ms. Hahn at all times relevant to this case. More specifically, but in summary only, the MFSMC providers met the standard of care by appropriately managing Ms. Hahn's prenatal care; appropriately triaging Ms. Hahn upon her presentation to Labor and Delivery on November 10, 2003; monitoring Ms. Hahn and her fetus electronically and clinically at appropriate intervals; appropriately interpreting the electronic fetal monitor; appropriately involving additional providers as warranted based upon changes in the EFM tracing; appropriately and timely performing a biophysical profile; and appropriately and timely moving to a cesarean delivery based upon a further change in the fetal status.

2

I specifically disagree with Plaintiff's allegations to the contrary, including, but not limited to, the allegations that the MFSMC providers fell short of the standard of care by not performing estimations of fetal growth and amniotic fluid status and non-stress tests on October 27, 2003; not recommending and offering induction of labor and delivery on October 27, 2003; not delivering Kyle Hahn at 39 weeks gestation; not instructing Ms. Hahn to immediately report to the hospital when she allegedly reported complaints of spontaneous rupture of membranes; not immediately connecting Ms. Hahn to the electronic fetal monitor at 3:08 p.m. on November 10, 2003; not performing a non-stress test, biophysical profile, or intrauterine resuscitative measures or ordering a cesarean section delivery at 4:32 p.m. on November 10, 2003; continuing the biophysical profile for thirty minutes; and not performing the cesarean section delivery within 30 minutes.

Because it is my opinion that the MFMSC providers did not breach the standard of care, it follows that it is my opinion that Plaintiff's alleged damages, including any injury to Kyle Hahn, were not proximately caused by any breach in the standard of care.

My opinions set forth in this report are not exhaustive of all opinions and conclusions that I have reached or will reach regarding the case. I reserve the right, if called as an expert witness in this case, to elaborate on my opinions as well as to supplement my opinions. I also anticipate that I will review additional information if called to be an expert witness in this case through the course of discovery, including but not limited to, deposition testimony, discovery responses and/or additional medical records, all of which I will factor into my opinions.

Very truly yours,

Frank Manning, M.D.

3